**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| GRAYSON SMITH et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.:  7:24-CV-83 (WLS) |
| | : | |
| AUTO-OWNERS INS. CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

### I.    Introduction

Before the Court is Plaintiffs' Motion (Doc. 19) to Exclude the Opinion Testimony of Brent A. Boyd. Therein, Plaintiffs move to exclude the testimony of Brent Boyd pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579 (1993). For the reasons below, Plaintiffs' Motion to Exclude the Opinion Testimony of Brent A. Boyd is **DENIED**.

### II.    Relevant Procedural History

Plaintiffs Grayson Smith and Savannah Smith filed suit against Auto-Owners Insurance Company in the Superior Court for Lowndes County on July 22, 2024. (Doc. 1-2). Defendant removed the suit on August 23, 2024. (Doc. 1). Plaintiffs subsequently filed the instant motion to exclude on June 25, 2025. (Doc. 19). Defendant responded (Doc. 48) and Plaintiffs replied. (Doc. 52).

### III.    Discussion

#### A.    Standard for Admissibility of Expert Opinions

The standard for admissibility of expert witness testimony is measured by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In making admissibility determinations, district courts are charged with the duty to perform the gatekeeping role of ensuring expert testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "[T]he test of reliability is 'flexible'" in that "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho*, 526 U.S. at 141–42 (1999) (quoting *Daubert*, 509 U.S. at 594) (emphasis in original); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) (recognizing district-court determinations of admissibility of expert testimony are reviewed for abuse of discretion). Even with this flexible standard, the Court must still "conduct an exacting analysis of the proffered expert's methodology." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

This gatekeeping role, however, should not "supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Before the expert's opinion testimony can reach a jury, the Court must determine that the offered expert testimony is "properly grounded, well-reasoned, and not speculative." *United States v. Frazier*, 387 F.3d 1244, 1296 (11th Cir. 2004) (Barkett, J., concurring) (quoting Fed. R. Evid. 702, advisory committee notes, 2000 amends.). This is critical because unreliable expert testimony has the power and potential to mislead or confuse a lay juror. *See id.* at 1260, 1263. Where there is factual dispute and experts reach differing conclusions, the Court is not authorized to "exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702, advisory committee notes, 2000 amends.

2

Arriving at the conclusion of whether or not to admit expert testimony is no small feat. Fortunately, *Daubert* and its progeny provide guidance. The Court must engage in a three-part inquiry and consider whether,

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems. Inc.*, 158 F.3d 548, 562 (11th 1998)). *Daubert* identified four, nonexclusive factors for assessing the reliability of an expert's reasoning or methodology. These factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey*, 298 F.3d at 1256 (citing *Daubert*, 509 U.S. at 593–94.) The Court may consider other relevant factors outside of the traditional *Daubert* factors, so long as the Court's gatekeeping inquiry is "tied to the facts of a particular case." *Kumho*, 526 U.S. at 150 (internal citation and quotations omitted).

As to the first part of the inquiry, the Eleventh Circuit has observed that experts may be qualified in various ways, including scientific training or experience in a field. *Frazier*, 387 F.3d at 1261. Indeed, qualifications are "by no means a guarantor of reliability." Id. (quoting *Quiet Tech. DC 8 v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341–42 (11th Cir. 2003)).

The second part of the inquiry, reliability, is a criterion separate from the qualification prong as reliability "remains a discrete, independent, and important requirement for admissibility." Id. The district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Frazier*, 387 F.3d at 1262. An "expert's method need not be perfect, nor must he apply it perfectly." *Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-CV-61485, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (citation omitted). That is, a minor flaw in an expert's reasoning or slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. *See Quiet Tech.*, 326 F.3d at

3

1346. The exclusion of the expert testimony is warranted if the "flaw is large enough" that the expert lacks good grounds for his conclusion. *Navelski v. Int'l Paper Co.*, 244 F.Supp.3d 1275, 1298 (N.D. Fla. 2017) (citation omitted).

As to the last part of the inquiry, helpfulness, the courts look to see if the expert testimony concerns the matters that are beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63.

While the Court has rigorous standards to apply in its *Daubert* inquiry, the proponent of the expert testimony also carries the burden to show that their expert's opinion is reliable by a preponderance of the evidence. *See Allison*, 184 F.3d at 1312; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) ("The evidentiary requirement of reliability is lower than the merits standard of correctness."). With this framework in mind, the Court will now assess the challenged expert's qualifications and reliability.

### B.    Relevant Factual History

During Hurricane Idalia, a large hardwood tree located on the northern side of Plaintiffs' property snapped near its base and fell on top of their dwelling. (Doc. 1-2 ¶¶ 23-24). Their insurer, Defendant Auto-Owners, conducted an initial inspection through two claims representatives. (Doc. 48 at 2). Plaintiffs indicated their belief the house had been racked and needed to be torn down. (*Id.* at 3). Auto-Owners retained experts Keith O'Donnell and Brent Boyd to analyze the damage to the property. (*Id.*). Boyd is a forensic engineer with Trinity Engineering. (*Id.* at 4). During his inspection of Plaintiffs' property, he took photos and measurements of the damage. (*Id.* at 5). Boyd concluded the property had not been racked. (*Id.*).

Plaintiffs retained expert Randall Crews to inspect the property. (*Id.*). Crews issued a report concluding that the property had been racked. (*Id.* at 6). Auto-Owners requested Boyd review the Crews report, Boyd reviewed the report, and he issued a supplemental report finding no evidence the structure had shifted off its foundation. (*Id.* at 7).

### C.     Plaintiffs' Motion to Exclude Boyd's Opinion

Plaintiffs argue that Boyd's experience and qualifications are inadequate and that he failed to dedicate the requisite time or conduct the necessary work to support his opinions. (Doc. 19 at 3, 5). The Court will address each argument in turn.[1]

### i.     Experience and Qualifications

Brent Boyd is a licensed engineer who received his engineering degree from the University of Alabama in 2010. (Doc. 48 at 10-11). He received his professional engineering license in 2019. (*Id.*). Boyd has worked as a forensic engineer with Trinity Engineering for over five years. (*Id.*). There, he conducts cause and origin inspection to determine the damage or loss to a property, timing of loss, and origin of loss. (*Id.*). He also conducts structural evaluations of properties and evaluates geotechnical issues with foundations. (*Id.*). He has inspected numerous properties affected by tree impacts and conducted evaluations of the damage thereto, including whether the structure had laterally shifted. (*Id.*).

Plaintiffs take issue with the fact Boyd had been licensed for less than four years at the time of the inspection at issue. (Doc. 19 at 3). They also state that nearly all of his professional time is spent "looking at damaged roofs for insurance companies" and he was retained by Defendant 918 times. (*Id.* at 4). Plaintiffs assert Boyd "has no graduate degree, [] has never given a presentation outside of his own company, and [] has never published any work in the field of engineering." (*Id.*). Therefore, Plaintiffs maintain that Boyd's experience and qualifications are inadequate for the purposes of this case.

Firstly, the Court is unpersuaded that four years is too short a time to be qualified. Boyd's degree and licensure indicate sufficient qualifications. If, as Plaintiffs maintain, their experts are better experienced than Boyd, that information is properly put before the jury at trial, not the Court in a motion to exclude. Secondly, Boyd has experience conducting evaluations of properties affected by tree impacts, like the instant case, including assessing whether the structure had laterally shifted, meaning a foundational issue related to racking. (Doc. 48 at 11). Third, and finally, the fact Boyd has worked for Defendant 918 times cuts

---

[1] Plaintiffs do not dispute the helpfulness prong of the *Daubert* inquiry, so the Court does not address it. If the Court did reach the issue, an expert who concluded the house had not been racked would be patently helpful in a case about whether the house had been racked.

against Plaintiffs' arguments. 918 claim evaluations are a significant amount of experience. If even a minority of those claims considered the issue of racking, Boyd would still be qualified to testify. If Boyd's extensive work for Defendant raises a credibility or bias issue, that issue is best put before a jury. For purposes of the instant review, Boyd's experience assessing structural damage and his degree and licensure render him sufficient as an expert witness in this case.

### ii.    Reliability

Plaintiffs' arguments largely center on reliability. They argue Boyd spent too little time conducting his inspection, employed a flawed and haphazard methodology, and he did not adequately consider the findings of other engineers. (Doc. 19 at 6, 8, 15). The Court is unpersuaded that Boyd is unreliable.

Boyd's quantity of time spent at Plaintiffs' property is sufficient for the purposes of the instant review. Plaintiffs state that Boyd was present at their property for about ninety minutes and never agreed to return for a more detailed inspection. (Doc. 19 at 6). Ninety minutes, in their view, is insufficient, especially when compared to their retained expert Randall Crews, who spent five and a half hours inspecting the house for racking alone. (Doc. 19 at 7). Defendant responded that Boyd reviewed the photos and measurements he took on-site for three to four hours. (Doc. 48 at 13). Defendant notes that Boyd's time spent at Plaintiffs' property allowed him to inspect "all walls under the main area of impact" and publish a 73-page, peer-reviewed engineering report (*Id.*). As stated, Boyd spent a substantial amount of time reviewing the instant case. It appears he spent less time on the issue of racking than Randall Crews, a useful point for the Plaintiffs to note at trial. Plaintiffs also note that Boyd gets paid a bonus for his quantity of inspections completed weekly. (Doc. 19 at 6). This point goes to credibility, more particularly, potential bias, not reliability, and is properly reserved for the jury. The length of time spent at Plaintiffs property does not undermine Boyd's reliability.

Boyd's methodology is sufficient for the purposes of the instant review. Plaintiffs argue that choosing which studs to measure by conducting a visual inspection is a "haphazard sampling" and "not a thorough, scientific approach," which left "the vast majority of walls [] unmeasured and uninspected in any meaningful way." (Doc. 19 at 9-10).

This argument goes to the comprehensiveness of Boyd's inspection, not its reliability. Indeed, if Plaintiffs measured a stud that Boyd ignored, that makes for persuasive evidence at trial, which Defendant may struggle to rebut.

Plaintiffs' critique of Boyd's methodology focuses on his use of his bubble level. (Doc. 19 at 10). They argue that using a one-foot bubble level on a nine-foot wall, not insisting the bubble be centered between the level's marked lines to declare a stud to be plumb, and his own data render his expert opinion unreliable. (*Id.*). Plaintiffs argue that to properly use a one-foot level on a nine-foot wall, one would need to take many more measurements than if one used a longer level. (*Id.* at 10-11). Indeed, Plaintiffs point out their experts' levels were longer than Boyd's, measuring at two feet for Randall Crews and eight feet for Bryant Buchner. (*Id.*). And that even with these longer levels, Plaintiffs' experts spent more time at the property. (*Id.*). Defendants respond that it is not about the length of the level, but rather ensuring "the engineer uses it in accordance with proper scientific procedures." (Doc. 48 at 16). And Boyd used his level to "evaluate multiple locations of the stud wall . . . negating any natural deviation in the wood which may skew the readings given by a larger level." (*Id.*). An "expert's method need not be perfect, nor must he apply it perfectly." *Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-CV-61485, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (citation omitted). That is, a minor flaw in an expert's reasoning or slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. *See Quiet Tech.*, 326 F.3d at 1346. Boyd's choice of level is not disqualifying, particularly given his assertion he used it in compliance with proper scientific procedures.

Plaintiffs further critique Boyd's "total lack of concern with centering," asserting that he considered walls plumb so long as the bubble in his level was within the plumb lines. (Doc. 19 at 12). Boyd based this measurement technique on what framing contractors in construction do and that "[i]t can be a little bit off, and . . . still probably meet the overall standards for construction. (*Id.* at 12-13). Defendant responds that this method is supported by generally accepted principles in the field, as well as the deposition testimony of multiple experts in this case. (Doc. 48 at 15). Even if the Court regards Boyd's permissiveness regarding the bubble being "a little bit off" as a flaw, a minor flaw in an expert's reasoning will not render an expert's opinion per se inadmissible. *See Quiet Tech.*, 326 F.3d at 1346.

Additionally, Plaintiffs assert that Boyd's data contradicts his findings because he documented conditions symptomatic of racking in his own report. (Doc. 19 at 13). Any incongruity between Boyd's data and his conclusions may make for persuasive evidence at trial, but does not support a finding of unreliability given Boyd's use of generally accepted principles. For these reasons, Boyd's methods are sufficiently reliable for purposes of the instant review.

Plaintiffs argue Boyd did not adequately consider the findings of other engineers because his findings disagreed with the reports of Plaintiffs' experts and he did not re-evaluate Plaintiffs' property after reading the disagreeing reports. (Doc. 19 at 15-16). This argument again serves only to undermine credibility, not reliability. Even if the argument did affect reliability, Defendant notes that "Boyd considered the two-page [Randall] Crew report for two hours." (Doc. 48 at 18). At trial over a contested matter such as this one, experts are bound to disagree. Existence of disagreement neither disqualifies an expert nor renders him unreliable. And a refusal to change his findings or return to the property following the receipt of a disagreeing report does not render Boyd's original findings unreliable. It simply creates and relates to a factual dispute appropriate for resolution at trial.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion (Doc. 19) to Exclude the Opinion Testimony of Brent A. Boyd is **DENIED** as to all evidence and argument, subject to Plaintiffs' right to renew specific objection based on the evidence at trial, and not addressed herein.

**SO ORDERED**, this 13th day of February 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

8