**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| GRAYSON SMITH et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.:  7:24-CV-83 (WLS) |
| | : | |
| AUTO-OWNERS INS. CO., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## **ORDER**

Defendant Auto-Owners Insurance Company moves for partial summary judgment. (Doc. 18) ("Motion"). After review, the Motion is **GRANTED**.

### I.   RELEVANT PROCEDURAL BACKGROUND

Plaintiffs Grayson Smith and Savannah Smith filed suit against Auto-Owners Insurance Company in the Superior Court for Lowndes County on July 22, 2024. (Doc. 1-2). Defendant removed the suit on August 23, 2024. (Doc. 1). Defendant subsequently filed the instant motion for partial summary judgment on June 27, 2025. (Doc. 18). Plaintiffs responded (Doc. 43) and Defendant replied. (Doc. 50). On February 13, 2026, the Court denied Plaintiffs' Motion to Exclude the Opinion Testimony of Brent A. Boyd. (Doc. 58).

### II.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

1

> (B) showing that the materials cited do not establish the absence
> or presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). [1]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more

---

[1] Local Rule 56 requires the movant for summary judgment to attach to the motion a separate statement of the material facts about which the movant contends there is no genuine dispute. M.D. Ga. L.R. 56. The respondent shall attach to its response a separate statement of material facts to which respondent claims there exists a genuine dispute. *Id.* The respondent shall also respond to each of the movant's numbered material facts. Here, the Smiths and Auto-Owners both comply with Local Rule 56.

2

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen,* 121 F.3d at 646. Yet the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.   FACTUAL BACKGROUND

During Hurricane Idalia, a large hardwood tree located on the northern side of Plaintiffs' property snapped near its base and fell on top of their dwelling. (Docs. 1-2 ¶¶ 23-24, 18-2 ¶ 1). Their insurer, Defendant Auto-Owners, conducted an initial inspection through two claims representatives. (Doc. 18-2 ¶ 4). Parties dispute the extent of the damage. (Doc. 43-1 ¶ 6). Auto-Owners retained expert building consultant Keith O'Donnell to conduct an inspection of the property and provide a scope of work necessary to address the areas of covered damage. (Doc. 18-2 ¶ 8). Auto-Owners also retained licensed engineer Brent Boyd to analyze damage to the property, the cause of the damage, and whether the property could be repaired. (*Id.* ¶ 9).

On September 13, 2023, O'Donnell inspected the property for eight to ten hours, took measurements of rooms, and conducted a detailed analysis of the interior finishings in the property. (*Id.* ¶¶ 10-11). For thirty years, O'Donnell owned two restoration companies that performed mitigation and reconstruction work at residential and commercial properties following large losses. (*Id.* ¶ 13). O'Donnell estimated the replacement cost value of the property as $320,091.13 and the actual cash value as $257,412.70. In his deposition, O'Donnell opined that the property was not racked. (Doc. 18-2 ¶ 15).[2]

On September 19, 2023, Boyd conducted an inspection of the property wherein he took photos and measurements of the damage. (Doc. 18-2 ¶¶ 19-20). He authored a 73-page,

---

[2] Plaintiffs dispute paragraph fifteen of Doc. 18-2. However, a review of O'Donnell's deposition shows that he indeed opined that the house had not been racked. (Doc. 31 at 31-32).

peer-reviewed[3] report regarding the damage to the property. (*Id.* ¶ 21). Boyd determined the property was not racked.[4] (*Id.* ¶ 26).

Plaintiffs retained Randall Crews to provide an opinion as to the repairability of the property. (Doc. 18-2 ¶ 27). On September 24, 2023, Crews measured and evaluated the house and found evidence of racking. (Doc. 43-1 ¶¶ 28, 30).

In response to the Crews report, Auto-Owners requested Boyd review the report to determine whether an additional inspection of the property was necessary to complete his analysis of the damage. (Doc. 18-2 ¶ 40). Boyd provided a second supplemental report stating he did not find any evidence that the structure had shifted off its foundation. (*Id.* ¶ 41). Boyd disagreed with Crews's determination the whole structure of the property had shifted off its foundation. (*Id.* ¶ 43).

Auto-Owners issued payment for the covered damage to the structure to Plaintiffs in the amounts of $257,412.70 under Coverage A Dwelling and $1,342.77 under Coverage B Other Structures. (Doc. 18-2 ¶ 36). Auto-Owners also issued payments in a total of $77,133.95 under Coverage C and $26,600 under Coverage D. (*Id.* ¶¶ 37, 39).

Auto-Owners was repeatedly asked to return to Plaintiffs' property for a reinspection and denied those requests. (Doc. 43-1 ¶ 51). Plaintiffs notified Auto-Owners months ahead of time of the plan to demolish their house. (*Id.*).

On January 11, 2024, Plaintiffs submitted a demand letter pursuant to O.C.G.A. § 33-4-6 (Doc. 18-2 ¶ 44). Auto-Owners representative Tim Brumer reviewed the letter and determined all amounts owed under the policy had been paid and that no new information was provided which would warrant reinspecting the property. (*Id.* ¶ 46). On May 10, 2024, Plaintiffs sent a second demand letter to Auto-Owners and attached for the first time a report from Quest Engineering & Failure Analysis, Inc., dated April 15, 2024, prepared by Bryant Buchner. (*Id.* ¶ 47). Plaintiffs' second demand letter specifically stated the purpose of the demand was to provide Defendant with the Quest report. (*Id.* ¶ 48). The Quest report

---

[3] Plaintiffs dispute the nature of this peer review. (Doc. 43-1 ¶ 21). The Court's ultimate ruling does not rely on the definition of "peer review," so it does not reach the issue.

[4] Plaintiffs dispute Paragraph 26. (Doc. 43-1 ¶ 26). Plaintiffs argue Boyd did not discuss racking and therefore his report did not include any determinations on the issue. However, Boyd's report stated "[n]o structural damage was found to the foundation." (Doc. 18-1 at 110). Racking is a kind of structural damage. Boyd's finding of no structural damage necessarily means he found the building was not racked.

4

contained a large amount of new information that was not previously provided to Auto-Owners. (*Id.* ¶ 49). Auto-Owners asserts that, given this new information, they would have reinspected the property but that Plaintiffs demolished the property before Auto-Owners saw the report containing the new information. (*Id.* ¶¶ 50-51).

## IV.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Auto-Owners moves for partial summary judgment on the § 33-4-6 bad faith claim. (Doc. 18). Defendant argues that Plaintiffs' claim fails procedurally and substantively. The Court addresses each in turn.

### A.  Plaintiff's Bad Faith Claim Fails Procedurally

O.C.G.A. § 33-4-6 sets forth the procedural requirements for recovery of damages from an insurer for its bad faith refusal to pay an insurance claim. *Cagle v. State Farm Fire & Cas. Co.*, 512 S.E.2d 717, 727 (Ga. App. 1999) ("The purpose of the section is to penalize insurers that delay payments without good cause." (quoting *Howell v. S. Heritage Ins. Co.*, 448 S.E.2d 275 (1994)). In particular, § 33-4-6(a) provides that [i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder [for the loss] . . . and all reasonable attorney's fees for the prosecution of the action against the insurer. O.C.G.A. § 33-4-6(a). As read by the courts, this provision requires a plaintiff to (1) give the insurance company at least sixty days to respond to his demand for payment prior to filing suit against the insurer and (2) establish that the refusal to pay was in bad faith. § 33-4-6(a).

Because this is a penalty provision, it is to be "strictly construed," meaning that a proper demand for payment is "essential" to the recovery of a claim under an insurance policy. *Stedman v. Cotton States Ins. Co.*, 562 S.E.2d 256, 258 (Ga. App. 2002) (citation modified). The first element under § 33-4-6 requires that the insurer be alerted, at least sixty days before suit is filed, that it will face a "bad faith" claim if it does not pay the specific loss noted. *Arrow Exterminators, Inc. v. Zurich Am. Ins. Co.*, 136 F. Supp. 2d 1340, 1355-57 (N.D. Ga. 2001); *Stedman*, 562 S.E.2d at 258 (requiring that demand be made at a time when "immediate payment" is due, which is upon expiration of sixty-day period (emphasis added)). *Id.* "A failure to wait at least sixty days between making a demand and filing suit constitutes an absolute bar

to recovery of a bad-faith penalty and attorney fees under this statute." *Cagle*, 512 S.E.2d at 727 (quoting *Blue Cross & Blue Shield v. Merrell*, 316 S.E.2d 548 (1984)).

Additionally, for the demand to be proper, it must come when "immediate payment" is due. *Stedman*, 562 S.E.2d at 258. The demand is "not in order if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss and therefore has no legal duty to pay at the time the demand is made." *Dixie Const. Prods., Inc. v. WMH, Inc.*, 179 Ga. App. 658, 658 (1986). Therefore, the bad faith claim fails if it either came before immediate payment was due or if the plaintiff sued less than sixty days after making the demand.

Plaintiffs' policy with Auto-Owners provides, "We will pay within 60 days after we receive your proof of loss and all other requested documents and the amount of loss is finally determined by an agreement between you and us, a court judgment or award." (Doc. 18-1 at 12). In the instant case, Plaintiffs submitted their demand letter on January 11, 2024.[5] (Doc. 18-2 ¶ 44). But Plaintiffs did not send Auto-Owners the Quest Report until May 10, 2024. (*Id.* ¶ 47). And the Quest Report counts as a requested document. ("We provided them with our reports and let them know to provide us with any other documentation that they felt they needed to provide to support—you know, to support the claim that the home was racked.") (Deposition of Daniel Williamson, Doc. 33 at 70).

The bad faith penalty exists to prevent delays in payment without good cause. *Howell v. S. Heritage Ins. Co.*, 448 S.E.2d 275 (1994). Plaintiffs expected the Quest Report would change Defendant's mind about the amount owed. ("The Quest Report represented a golden opportunity for Auto-Owners to reverse course and address this claim thoughtfully.") (Doc. 43 at 19-20). This means that the Quest Report was a document which would affect Auto-Owners' loss calculation and which Plaintiffs thought would support the claim that the home was racked. Therefore, the Quest Report counts as a requested document.

Additionally, the procedural requirements of the bad faith statute ensure the insurer is properly on notice they may be subject to bad faith penalties and afford a chance to re-evaluate their decision-making. When a policy requires all requested documents to be provided sixty

---

[5] Plaintiffs do not assert that the May 10, 2024, demand letter should be treated as the operative demand letter, so the Court does not address this possibility.

days before immediate payment is due, and the insurer requests all reports and documentation that might change its mind on the loss calculation, such a document cannot be provided simultaneously with a demand letter for the demand letter to meet the bad faith statute's procedural requirements. Plaintiffs failed to comply with the procedural requirements of § 33-4-6 and summary judgment in favor of Defendant is appropriate. While this finding suffices to grant partial summary judgment for Defendant, the Court addresses the Plaintiffs' substantive failures for the sake of thoroughness.

### B. Plaintiff's Bad Faith Claim Fails Substantively

Penalties for bad faith are not authorized in situations "where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Assurance Co. & C.V. BBB Svc. Co.*, 576. S.E.2d 38 (Ga. Ct. App. 2002). "Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." *Georgia Intl. Life Ins. Co. v. Harden*, 158 Ga.App. 450 (Ga. Ct. App. 1981).

"As a matter of law, it is reasonable for an insurer to deny a claim based on [the advice of independent consultants] unless the advice is patently wrong and the error was timely brought to the insurer's attention . . . or unless the advice is 'in the nature of mere pretext for an insurer's unwarranted prior decision to deny the claim.'" *Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga.App. 587, 859 S.E.2d 130, 135 (Ga. Ct. App. 2021) (citing *Haezebrouck v. State Farm Mut. Auto. Ins. Co.*, 216 Ga.App. 809 (Ga. Ct. App. 1995); *Wallace v. State Farm Fire & Cas. Co.*, 247 Ga.App. 95 (Ga. Ct. App. 2000). In the pretext analysis, it is not relevant whether the independent consultant's conclusions were correct or incorrect, but rather "whether their investigations were pretext for a foregone decision." *Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga.App. 587, 859 S.E.2d 130, 136 (Ga. Ct. App. 2021). Therefore, for a § 33-4-6 to survive summary judgment in a case where the insurer relied on the advice of independent consultants, a plaintiff must put on evidence the advice was patently wrong or was mere pretext.

Plaintiffs do not address the issue of pretext directly. In a way, they address the issue when claiming that Auto-Owners learned of their experts' opinions for the first time during

7

preparation for the instant lawsuit. (Doc. 43 at 17). However, this claim cannot hold water, even under the lenient standard given to the non-movant in a motion for summary judgment. As Auto-Owners asserts, they relied on O'Donnell's evaluation of the scope of damage and the costs to address this damage when calculating how much to pay Plaintiffs under their policy. (Doc. 50 at 4-5). And, indeed, O'Donnell's estimate of damage and the cost to repair is where the amount Auto-Owners paid Plaintiffs comes from. (Doc. 18-2 ¶¶ 14, 36). The record indicates that O'Donnell's opinion was not just not pretextual, it formed the basis for Defendant's decision-making in the handling of the Smiths' claim. Therefore, Plaintiffs cannot assert that Defendant's reliance on O'Donnell's opinion was mere pretext for an unwarranted prior decision to deny the claim.

Plaintiffs do not meet their burden of putting on sufficient evidence that Defendant's experts' opinions were patently wrong. Plaintiffs assert Defendant's experts' opinions were wrong, but there is not sufficient evidence in the record to support a finding that the opinions were *patently* wrong. "To be patently wrong is to be obviously or apparently wrong." *Montgomery v. Travelers Home & Marine Ins. Co.*, 360 Ga. App. 587, 593 (2021) (citing Black's Law Dictionary (11th ed. 2019)). It is not enough to merely "raise a factual question concerning whether or not the advice was wrong." *Id.* The severity of the wrongness of the expert opinions dictates the reasonableness of the insurer's reliance on the opinions. "[A]n insurance company has reasonable grounds to contest a claim where "factual issues regarding the merits of [the] claim are in genuine conflict." *Id.* at 594. And "[t]he existence of a factual dispute on the underlying merits of [the] insurance claim causes there to be no conflict, as a matter of law, regarding whether [the insurer] had reasonable grounds to contest the claim." *Id.* For Plaintiffs' bad faith claim to survive summary judgment, they must put on sufficient evidence to support a finding the opinions were patently wrong.

Keith O'Donnell is an expert building consultant. (Doc. 18-2 ¶ 8). He inspected the property for eight to ten hours and took about 1,300 photos of the property. (*Id.* ¶ 11). He has worked in the field for thirty years and owned two restoration companies that performed mitigation and reconstruction work at residential and commercial properties following large losses. (*Id.* ¶ 13). Based on his training, experience, and inspection, he determined the property could be repaired and the cost at which it could be repaired. (*Id.* ¶ 14). Plaintiffs do not assert

8

O'Donnell's conclusions were patently wrong. Plaintiffs largely dispute whether he definitively reached a conclusion on the issue of racking, asserting in their brief that he never considered the issue before his deposition and that, at his deposition, he opined the house was not racked by the tree, but had been out of plumb for other reasons. (Doc. 43 at 17). Plaintiffs take issue with the fact that O'Donnell's opinion contradicts Boyd's opinion[6] that the property was never out of plumb. (Doc. 43 at 17). Certainly, these issues create a dispute for the quality and accuracy of O'Donnell's opinion at trial, but they do not demonstrate wrongness so severe that a reasonable jury could rule in Plaintiffs' favor on the issue of patent wrongness. Therefore, Auto-Owners relied on an independent consultant's opinion in making its claim decision and Plaintiffs did not create a genuine dispute of material fact as to whether that consultant's opinion was patently wrong. Therefore, the § 33-4-6 claim cannot survive summary judgment.

## V.    CONCLUSION

Plaintiffs' § 33-4-6 claim for bad faith fails for two independent reasons: Plaintiffs failed to fulfill the statute's procedural requirements and did not demonstrate that Defendant's reliance on expert opinions was pretextual or that the opinion was patently wrong. Accordingly, Defendant's Motion for Partial Summary Judgment (Doc. 18) is **GRANTED**.

**SO ORDERED**, this 20th day of February 2026.

> **/s/ W. Louis Sands**
> **W. LOUIS SANDS, SR. JUDGE**
> **UNITED STATES DISTRICT COURT**

---

[6] The Court does not reach the issue of whether Boyd's opinions were patently wrong. A § 33-4-6 claim fails if the plaintiff fails to show the opinion on which the insurer relied was patently wrong. Here, Auto-Owners relied on O'Donnell's opinion, which was not shown to be patently wrong, meeting the requirements for a grant of summary judgment on the issue, regardless of the quality of Boyd's opinions.